Filed 7/20/16  P. v. Harnish CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B263412 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. NA092007) |
| DARRYL EUGENE HARNISH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Affirmed.

John Lanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Jonathan J. Kline and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Darryl Eugene Harnish of first degree murder (Pen. Code, § 187, subd. (a); count 1),[1] attempted murder of a peace officer (§§ 667/187, subd. (a); count 2), and assault on a peace officer with a semi-automatic firearm (§ 245, subd. (d)(2); count 3). The jury found true in each count certain firearm use allegations (count 1, § 12022.53 subd. (d) (discharge causing death); counts 2 and 3, § 12022.53, subd. (c) (intentional discharge)). The trial court sentenced defendant to a total term of 85 years to life. He appeals from the judgment of conviction, raising one issue: that the prosecutor committed misconduct in his rebuttal argument by saying that this was not a capital case. We conclude that the claim was forfeited by a failure to object, and, in the alternative, is meritless. We therefore affirm the judgment.

## BACKGROUND

*Prosecution Evidence*

On April 19, 2012, around midnight, Darryl Brown and Terry Alexander were at a bus stop bench at Pacific Avenue and Pacific Coast Highway in Long Beach. From across the street at a Mobil gas station, defendant (who is Caucasian) yelled racial slurs and said "I'll kill all you motherfuckers." Alexander rode his bicycle across the street. As Alexander approached, defendant pulled out a gun and shot him twice. Alexander, fatally wounded, fell near the gas pumps.

Long Beach Police Officer Arthur Vega heard the gunshots and drove to the scene. He saw Alexander's wounded body at the gas station and defendant walking north on Pacific Avenue. Officer Vega drove toward defendant, and shined his search light at him. Defendant then pulled out a gun and fired twice,

---

[1]     All unspecified section citations are to the Penal Code.

2

striking the hood and windshield of the patrol car.  Defendant continued to walk out of Officer Vega's sight.

A witness, Silverio Perez, observed defendant change magazines in his firearm.  Officer Vega and a back-up officer, Officer Diaz, located defendant and ordered him to stop and put his hands up.  Defendant put his gun down for a moment, but then picked it up and ran.  As the officers pursued, defendant turned toward the officers.  They fired, wounding defendant, and he fell to the ground.  In a subsequent search, police found a .45 caliber semi-automatic handgun in defendant's possession, and an extra magazine in his pocket.  Cartridge cases found at the murder scene and the scene of the shooting at Officer Vega, as well as bullet fragments from Officer Vega's car, were matched by a ballistics expert to defendant's firearm.

*Defense*

Defendant, who was 67 years old, testified that he lived in the area of the Mobil station, had experienced several incidents in Long Beach in which he was threatened by other people on the street, and that he carried a handgun for protection.  On the night of the shooting, he was returning home from buying a half-pint of rum when Alexander rode up on his bicycle.  From perhaps 18 feet away, Alexander said that he was going to kick defendant's "mother-fucking ass."  Believing he was about to be robbed or beaten, defendant pulled out his gun and shot Alexander twice.  Defendant panicked and started walking home.  When Officer Vega arrived, defendant fired at the police car (not the officer) so as to distract the officer and escape for home.  Appellant continued to walk, trying to get home, and was shot three times.

Defendant presented evidence that when Alexander was shot, his blood alcohol level was approximately .25 percent. In January 2012, Alexander had been arrested for being drunk in public after a fight was reported near the Mobil station that was the scene of his murder.

According to Ivan Alejandro Torres Cota, the manager of a pizzeria across the street from the Mobil station, Alexander was homeless and slept behind the pizzeria. On March 26, 2012, Alexander demanded free food from the pizzeria's drive up window. When the Cota refused, Alexander said, "I'm going to fuck you up," tried to go through the window, and kicked the rear door. When Cota confronted him, Alexander pushed him, and Cota pepper-sprayed Alexander.

In a search of defendant's residence, no racist literature was found. Two African-American acquaintances of defendant, Jerry Melvin and Adrian Phillips, testified that defendant never exhibited any racial animus.

## DISCUSSION

In his argument to the jury regarding the charged murder of Alexander, defense counsel relied on theories of self-defense (arguing for acquittal) and unreasonable self-defense (arguing for at worst a conviction of voluntary manslaughter). Regarding the charged attempted murder of Officer Vega and the charged assault with a firearm on him, defense counsel argued that defendant was not guilty because defendant did not intend to kill Officer Vega (attempted murder) and because he did not intend to apply physical force to him (assault with a firearm).

In explaining each juror's obligation to evaluate the evidence closely and reach his or her own conclusion whether guilt was proven beyond a reasonable doubt, defense counsel used the analogy of a pilot in command of an aircraft:

4

"[Y]ou as jurors are the pilots in command of this case and you are individually pilots in command. That's unique about being a pilot in command. You can't delegate your responsibility or your authority to your copilot. You can't delegate it to a fellow juror. You are individually responsible. . . . [T]his kind of authority is reserved for situations that are enormous [in] importance to other individuals, not just to the pilot but to the passengers and people on the ground and to Darryl Harnish [defendant] who is [in] a very real sense a passenger in the airplane you are flying and his life depends on your decisions."

In his rebuttal argument, as an afterthought in the course of rebutting the defense argument that complete self-defense applied to the killing of Alexander, the prosecutor briefly responded to defense counsel's comment that defendant's "life" depended of the jurors' decision: "This is what the defense wants you to buy into is that the defendant had a right to self-defense and he used that. Send 'em home. Goes out the door. And by the way, I meant to mention this earlier. The defense said . . . something to the effect of his life is in your hands or something like that. You should all know this is not a death penalty case. So if anyone was wondering about that, this isn't a death penalty case." The prosecutor then discussed how the elements of self-defense did not apply to Alexander's killing on the evidence presented.

On appeal, defendant contends that the prosecutor committed misconduct in mentioning that this was not a death penalty case and suggesting that a finding of self-defense would send defendant "out the door," even though self-defense did not apply to the charges involving Officer Vega. According to defendant, the prosecutor's comments so undermined the jury's sense of responsibility that defendant's convictions must be reversed. We disagree.

5

First, defense counsel failed to object to the prosecutor's comments and request a curative instruction. Because there is no showing that an objection would have been futile, and it is abundantly clear from the record that a simple admonition would have cured any perceived harm, the contention is forfeited. (*People v. Foster* (2010) 50 Cal.4th 1301, 1354.)

Second, in the alternative, and to forestall any later claim that trial counsel was ineffective (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1044, fn. 5), we conclude that the prosecutor's argument was not improper. Defense counsel told the jury that defendant was in "a very real sense a passenger in the airplane you are flying and his life depends on your decisions." By briefly stating that this was not a death penalty case, the prosecutor simply sought to eliminate any possible concern that defendant's life in "a very real sense" literally depended on the jurors' verdict. (See *People v. Hyde* (1985) 166 Cal.App.3d 463, 479 [trial court's informing the jury during voir dire that the trial did not involve the death penalty properly "avoided any possibility that a prospective juror's concern about serving on a death penalty case might skew his answers to voir dire questioning," the appellate court found "it impossible to contend that a jury charged with trying a murder defendant in a noncapital case is more likely to unfairly convict because of a diminished 'sense of responsibility'".] Further, the prosecutor's comment was an afterthought in the course of properly directing the jury's attention to the evidence and the law on self-defense. Finally, to the extent defendant contends that the jury might have somehow been confused into thinking that defendant would escape any punishment for the crimes against Officer Vega if self-defense applied, the argument is nonsensical. The prosecutor never suggested that defendant was seeking exoneration for the crimes against Officer Vega on a claim of self-defense. He focused his discussion of self-defense on the murder charge alone. In short,

6

even if defendant did not forfeit his claim of prosecutorial misconduct, the claim fails on the merits.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


COLLINS, J.

7